CASE 62.—ACTION   BY  SAMUEL   WESTHEIMER  &  CO.,
        AGAINST M. H. FLARSHEIM & CO. AND OTHERS
        FOR  BALANCE  DUE  ON  INDEBTEDNESS.—January 30.

## Westheimer & Co. v. Flarsheim & Co. &c.

Appeal from Jefferson Circuit Court; Common Pleas Branch (Second Division).

Thos. R. Gordon, Judge.

From a judgment dismissing the petition plaintiff appeals.  Affirmed.

Insolvent Debtors—Settlement of Estates—Release by Creditor—
    Agreement With Debtor—Action to Enforce.—A statute of
    Minnesota provides, in substance, that "no creditor of an
    insolvent debtor shall receive any of the proceeds of the
    debtor's estate unless he files with the clerk of the court a
    release to the debtor of all claims therein other than such as
    may be payable under the provisions of the act." It was
    agreed by an insolvent debtor in said State, that if a certain
    creditor would file his claim under said act and receive his
    pro rata share of the debtor's estate that he would thereafter pay the balance of his claim, with, interest, as soon as
    he could.  In an action in this State to enforce said agreement, held—that it was not founded upon sufficient consideration, was fraudulent and not enforcible.

W. M. SMITH for Appellants.

We contend:—

1.  That the debtor promised to pay plaintiffs an additional

amount when able, does not concern the other creditors or affect the pro rata, as that is determined alone by the court, and the discharge from the debts, in no event is dependent upon same.

2. It cannot be urged that the plaintiffs might not have filed their claim except for the new promise, because the right to file or not is absolute and unconditional, and the other creditors have no rights to same, and consequently no matter what action is taken they cannot be prejudiced.

3. The discharge of the original debt herein, was by operation of law, and the same moral obligation to support a new promise still exists, as in case of discharge under the National Bankruptcy Act.

ALFRED SELLIGMAN, Attorney for Appellee.

### POINTS MADE AND AUTHORITIES CITED.

1. Westheimer & Co. sued Flarsheim upon an alleged new promise, to pay when able, the balance of a debt which the petition alleges was discharged after the making of the said promise, in a proceeding under the Minnesota Insolvency laws.

2. The Minnesota Insolvency laws provide that any creditor proving his claim in the proceedings shall not share in the benefit of the proceeding, or receive any share of the proceeds of the debtor's estate, unless he shall give a release to the debtor of all claims other than such as may be paid under the provisions of said Act. This release Westheimer gave to Flarsheim and the judgment in the insolvency proceeding discharged Flarsheim of all claims owing to Westheimer other than such as may be paid under the provisions of said Act.

(a) Westehimer claims that anterior to the filing of the claim and before the entry of the judgment, and while Flarsheim's original obligation was valid, binding and enforcible, Flarsheim promised to pay, when able, the balance of this claim after crediting dividends thereon.

3. The discharge of Flarsheim was by voluntary act of the creditors, including Westheimer, who joined in the insolvency proceedings, and unless some new and valuable consideration passed, the promise was nudum pactum and uninforcible. (Denny v. Bennett, 128 U. S., 489; Union Bank v. Rugg, 78 Minn., 262.)

(a) This is to be distinguished from a discharge by operation of law, to which the creditor has not voluntarily assented. (Egbert v. McMichael, 9 B. Mon., 44; Bigler v. Crigler, 7 Ky. Law Rep., 662; Duff v. Higgins, 8 Ky. Law Rep., 358; Doom v. Snyder,

vol. 124—31.

10 Ky. Law Rep., 281; Jones v. Talbot, 13 Ky. Law Rep., 303; Eckler v. Gailbraith, 12 Bush, 72; Brooks. v. Payne, 25 Ky. Law Rep., 25; Kimball v. Coon, (Minn.) 47 N. W. Rep., 315; Higgins v. Dale, 9 N. W. Rep., 583; National German Am. Bk. v. Wilder, 27 N. W., 201; In re Gazette, 29 N. W. Rep., 347; Montgomery v. Lampton, 3 Met., 519.)

4. Even if this case falls within the rule respecting discharges by operation of law, the promise was made before the discharge and while the original debt existed, and no action can be main-tained thereon. (Gilmore v. Green, 14 Bush, 774; Hopkins v. Stout, 6 Bush, 375; Carr v. Robinson, 8 Bush, 274; Trousdale v. Anderson, 9 Bush 277; Ogden v. Redd, 13 Bush, 581; Thornberry v. Dils, 80 Ky., 242; Meyer v. Zodel's Admr., 96 Ky., 363; Graves v. Meguire, Helm & Co., 79 Ky., 532.)

5. The new promise having been made before Westheimer filed their claim in insolvency proceedings, any liability on the new promise itself was discharged because thereafter Wes-themier filed in said proceedings a claim, and a "judgment was entered in said proceedings discharging the insolvent from all claims due participating creditors except to dividends. (Kimball v. Coon, 47 N. W. Rep., 315.)

6. Payments subsequent to the discharge will not avail either to establish a new promise or to revive the debt. (Toole v. Smith's Exrs., 98 Ky., 466; Chism v. Barnes' 104 Ky., 317.)

7. The alleged agreement, to-wit, to pay a dividend to cred-itors and apply it to reduce a claim which was to be secretly paid, was upon fraudulent consideration and will not support a cause of action.

8. This action is in effect a collateral attack upon the judg-ment in the insolvency proceedings, and cannot be maintained. (Ewell v. Pitman, 16 Ky. Law Rep., 299; 27 S. W. Rep., 817.)

OPINION OF THE COURT BY JOHN D. CARROLL, COM-MISSIONER—Affirming.

Previous to the year 1890 the appellees became indebted to appellants in the sum of $1,218. In the latter year appellees, who were then residents of Minnesota, became insolvent, and took the benefit of the law of that state authorizing assignments for the benefit of creditors. So much of this law as is perti-nent to this case reads as follows: "No creditor of

any insolvent debtor shall receive any benefit under the provisions of this act, or any payment of any share of the proceeds of the debtor's estate, unless he shall have first filed with the clerk of the district court in consideration of the benefits of the provisions of this act a release to the debtor of all claims other than such as may be payable under the provisions of this act for the benefit of such debtor; and thereupon, the court or judge may direct that judgment be entered, discharging such debtor from all claims or debts held by creditors who shall have filed such release." Gen. St. Minn., 1891, sec. 4268. The petition filed by appellants against appellees avers that "at the time of the institution of the proceedings by the defendants under said assignment statute no part of the indebtedness due them had been paid, and plaintiffs had not proven up their claim in said assignment proceedings; that thereupon the defendants then agreed and promised said plaintiffs that they would pay said claim with interest as soon after the determination of the assignment proceedings as they were able, provided the plaintiffs would prove up their said claim in said assignment proceedings so as to reduce same to the extent of the pro rata distribution thereunder; that thereupon, and by reason of said agreement and promise aforesaid, and relying upon same, plaintiff did prove up their said claim in said assignment proceedings, and upon the distribution of the estate in said proceedings received upon their claim the sum of $500; that by reason of said agreement and promise aforesaid plaintiffs, accepting and relying upon same, did prove up said claim against defendants, and by reason of the judgment of the court by operation of law the original indebtedness was discharged, all of which facts were at the time known to said defendants; that thereafter,

and after the determination of said assignment proceedings, the defendants did again ratify and confirm said promise and agreement by paying to plaintiffs under said promise and agreement on said indebtedness divers sums, amounting to $171," and they sought judgment against appellees for the balance due on their claims. The trial court sustained a demurrer to the petition as amended, and plaintiffs below, now appellants, declining to plead further, their petition was dismissed, and they appeal.

Several interesting questions are discussed in the well-written briefs of counsel representing the parties to this controversy, but we do not deem it necessary to consider but one of the questions made, as that is conclusive of the correctness of the ruling of the lower court. It will be observed that the basis of appellants' claim is the alleged promise of appellees that, if appellants would present their claim in the assignment proceedings, appellees would pay the remainder of the claim after appellants had received their pro rata part of the distribution made in the assignment proceedings, and that induced by this promise, and relying upon the same, appellants did prove up their claim, and did receive the same as other creditors their distributable share of the estate. The foundation of this agreement was a fraud. Aside from this, it was not founded on a sufficient consideration, and the court will not lend its aid to its enforcement. Under the statute a creditor who did not submit himself to the jurisdiction of the court by presenting his claim could not receive any part of the assigned estate, and when a creditor did file his claim with the clerk of the district court the effect was to release the debtor of the entire debt, except so much thereof as might be paid in the assignment proceedings. Therefore, if no agreement had been

made, and appellants had filed their claim and received their portion of the debtor's estate, he was released from all liability for the balance of the claim. The law does not require a creditor to file his claim. It is optional with him whether he does so or not. If he does file it, he gets his pro rata share of the proceeds in satisfaction of his debt. If he does not present his claim, he receives no part of the debtor's estate distributed in the proceedings, but is not estopped from afterwards collecting, if he can, his debt. The purpose of the agreement made between these parties was to evade the statute, and to escape the effect of its provisions. It also gave appellants an advantage over the other creditors, because the amount appellants received in the distribution reduced to that extent the amount other creditors would have received, and at the same time did not prejudice appellants, as under the agreement, if enforceable, appellees were obliged to pay the balance due, whatever it might be. To uphold and sanction a transaction like this would be to offer a premium upon practices that would enable one creditor, without diminishing his claim or right to collect, to take away from other creditors part of a fund, to the whole of which, in good faith, they were entitled. The creditors of appellees had no notice of this arrangement, and it is to be presumed that the court in which the proceeding was had was ignorant of it:

Counsel for appellants undertake to distinguish this case on the point under consideration from the general rule relating to the composition of debts, conceding that in ordinary cases of composition or accord and satisfaction such an agreement as the one here made would be a fraud upon the rights of the other creditors, and unenforceable, but insisting that

here the debts are released by operation of law; the pro rata being determined by law, and not by the creditor, and the right to file or not file a claim being entirely optional with the creditor. We are unable to perceive the distinction sought to be made by counsel. Technically there may be one, but in sound reason there is not. In our opinion the debtor is discharged under this statute, not by operation of law, but by the voluntary act of the parties. The creditor must determine for himself whether or not he will be a party to the proceedings. The law does not require him to come in, nor does his failure to do so discharge his debt. But, if he voluntarily submits himself to the jurisdiction of the court he accepts in full satisfaction of his claim the distributable share of the assets paid to the creditors. There is a marked distinction between this statute and the United States bankruptcy act. Act July 1, 1898, c. 541, 30 Stat., 544 (U. S. Comp. St., 1901, p. 3418). Under the latter act the creditor has no election. If his claim is scheduled by the debtor, or he has notice of the procedings, the adjudication operates as a discharge. The wishes of the creditor are not consulted. Hence it may well be said that the debtor is released by operation of law. When the appellants filed their claim, the other creditors had the right to believe that they were in good faith under the statute attempting to secure and receive their pro rata part of the assigned estate, and that this was the only motive that prompted them to file it. Therefore it is manifest that the debtor, when he induced them to file their claim and get their pro rata in the distribution, obligating himself to pay the balance due, was giving them a preference and an advantage that they would not have had except for this agreement. The debtor may have had some

reason for desiring to pay these creditors in full, and for the purpose of reducing their claim as much as possible he desired them to get what they could out of his general estate set apart for the benefit of all his creditors. Except for the agreement made, they would not have presented their claim, and the other creditors would have received a larger pro rata. It is said, however, that the other creditors are not and have no right to complain. Be this as it may, before appellant can recover he must show that the new promise upon which he relies to support his action is based upon a sufficient consideration. Upon this question it is sufficient to say that as the discharge was not by operation of law, but resulted from the voluntary act of appellant, it is well settled that a promise to pay is not enforceable. As said in Montgomery v. Lampton, 3 Metc, 519: "Where a debtor has been discharged from the debt by provision of positive law, an express promise afterwards to pay the debt will be enforced, but, where the discharge is the fair, voluntary act of the creditor, a subsequent express promise to pay the debt will not be enforced."

The judgment of the lower court is affirmed.